UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| RIQUEL LOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:25-CV-417-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| SHERIFF RAMON PINEIROA, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on the Motion to Dismiss filed by Defendants Sheriff Ramon Pineiroa and Deputy Chief Brandon Bryan. [R. 8]. Plaintiff Riquel Logan filed a response, [R. 14], and Defendants replied. [R. 16]. This matter is therefore fully briefed and ripe for review. For the reasons set forth below, the Court will grant in part and deny in part the Motion to Dismiss.

### I.    BACKGROUND

Plaintiff filed her original complaint in Nelson Circuit Court in Nelson County, Kentucky on June 16, 2025. [R. 1-1 (State Court Complaint)]. Defendants removed the matter to this Court on July 7, 2025, [R. 1], and filed their first Motion to Dismiss the following day. [R. 5]. In response, Plaintiff filed an Amended Complaint. [R. 7].

In her Amended Complaint, Plaintiff names as defendants Sheriff Ramon Pineiroa, individually and in his official capacity as an employee of the Nelson County Sheriff's Department, and Deputy Chief Brandon Bryan, individually and in his official capacity as an employee of the Nelson County Sheriff's Department. *See id.* ¶¶ 7, 8. She alleges the following facts.

Since May of 2020, Plaintiff has been the sole owner of a 2018 Nissan Altima, which

- 1 -

became Plaintiff's primary method of transportation. *Id.* ¶¶ 11, 13. On or about June 15, 2020, Defendant Bryan followed Plaintiff to a shop, observed the car, then left the scene. *Id.* ¶¶ 14–15. The next day, Defendant Bryan appeared and executed a criminal warrant unrelated to Plaintiff at a residence where Plaintiff had parked the car. *Id.* ¶ 17. Defendant Bryan ordered a tow truck to tow the car and thereafter stored it under the control of the Nelson County Sheriff's Department as evidence. *Id.* ¶¶ 19–21. When Plaintiff requested the return of the car, her request was denied and she was told it had been sold, *id.* ¶¶ 22–24, and when Plaintiff requested its return a second time, she was told she must pay $17,000 to secure its return. *Id.* ¶¶ 25–26. In 2024, Plaintiff received a certified letter stating that her vehicle would be returned if she paid $17,000, *id.* ¶ 27, and in early 2025, Plaintiff learned Defendants were driving the car and had put their names on its title as the car's exclusive owners. *Id.* ¶¶ 28–29. Then, on March 5, 2025, Defendants were indicted and charged with various counts in relation to their treatment of the car and other items unrelated to this lawsuit, including abuse of public trust, theft by deception, and official misconduct, among other offenses. *Id.* ¶¶ 30–34.

Based on these factual allegations, Plaintiff asserts the following causes of action: a "*Monell*-related[1] cause of action" under 42 U.S.C. § 1983 (Count I, against Sheriff Pineiroa in his individual and official capacities); a § 1983 claim citing continuing trespass (Count II, against both defendants in their individual and official capacities); a § 1983 claim citing "trespass to property/wrongful taking/conversion" (Count III, against both defendants in their individual and official capacities); a § 1983 claim for "failure to train and supervise" (Count IV, against Sheriff Pineiroa in his individual and official capacities); a claim under Kentucky common law for negligent "trespass on personal property/taken/conversion of personal property" (Count V, against

---

[1] The Court understands this to be a claim for municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

both officers in their individual capacities); and a claim under Kentucky law for "trespass to property/wrongful taking/conversion" (Count VI, against both officers in their individual capacities). *Id.* ¶¶ 40–88. Plaintiff seeks compensatory and punitive damages. *Id.* at 14.

In light of the Amended Complaint, the Court denied the first Motion to Dismiss as moot and without prejudice. [R. 9]. Defendants filed a second Motion to Dismiss, which is currently pending. [R. 8]. Plaintiff filed a response, [R. 14], and Defendants replied. [R. 16].

In the parties' filings, they referenced the ongoing state court criminal proceedings related to this case. See [R. 1-1, ¶¶ 28–31]; [R. 8-1, pp. 3–4]. The Court therefore ordered the parties to provide a joint status report advising of the status of those proceedings. [R. 17]. Unable to come to an agreement on a joint status report, each party filed their own status report. [R. 18]; [R. 19]. Both advise as to the outcome of the state court criminal proceedings. The criminal action against Sheriff Pineiroa has been dismissed in its entirety. *See* [R. 18, p. 1]; [R. 19, p. 1]. The criminal action against Deputy Chief Bryan was resolved by plea agreement. *See* [R. 18, p. 1]; [R. 19, p. 1]. In both actions, the claims related to Plaintiff's car were dismissed. [R. 18, p. 1]; *see also* [R. 22].

This matter is now ripe for review. For the reasons set forth below, the Court will grant in part and deny in part Defendants' Motion to Dismiss, [R. 8].

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

### III. ANALYSIS

#### A. Federal Claims

##### 1. Individual or Official Capacities

As noted above, Plaintiff brings four federal claims in her Amended Complaint, each arising under 42 U.S.C § 1983: one "*Monell*-related cause of action" brought against Sheriff Pineiroa in his individual and official capacities (Count I); a § 1983 claim citing continuing trespass brought against both defendants in their individual and official capacities (Count II); a § 1983 claim citing "trespass to property/wrongful taking/conversion" brought against both defendants in their individual and official capacities (Count III); and a § 1983 claim regarding

"failure to train and supervise" brought against Sheriff Pineiroa in his individual and official capacities (Count IV). [R. 7, ¶¶ 40–71].

The Court will first clarify which claims are asserted against the officers in their official capacities and which are asserted against them in their individual capacities. As for the *Monell* claim (Count I), Plaintiff concedes in her response that "*Monell* claims asserted against defendants in their individual capacities cannot survive a motion to dismiss and should be dismissed." [R. 14, p. 4 (citing *Davis v. 36th District Court*, No. 2:20-CV-12145, 2021 WL 2402083, at \*4 (E.D. Mich. June 11, 2021))]. The Court agrees. *See Baker v. Bean*, No. 5:24-CV-1-BJB, 2025 WL 2323953, at \*3 (W.D. Ky. Aug. 12, 2025) ("[T]he *Monell* doctrine applies only to municipalities and not officials sued in their individual capacities."). As such, the Court understands that Plaintiff brings her *Monell* claim (Count I) against Sheriff Pineiroa in his official capacity only. *See United Food & Com. Workers Loc. 1099 v. City of Sidney*, 364 F.3d 738, 752 (6th Cir. 2004) ("Appellants' remaining § 1983 claim is against O'Leary in his official capacity as Shelby County Sheriff, and, as the district court noted, this claim is really one against Shelby County itself."); *Monell*, 436 U.S. at 690 n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . .").

As for the remaining § 1983 claims, the Court understands from Plaintiff's response that she brings Count II and III against the officers in their individual capacities only. *See, e.g.*, [R. 14, p. 6]. Indeed, the law is clear that state officials sued in their official capacities for damages are immune from § 1983 liability under the Eleventh Amendment. *Barton v. Whitley County*, No. 6:24-CV-145-CHB, 2025 WL 1646258, at \*3 (E.D. Ky. June 10, 2025) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). "Moreover, when state officials are sued in their official capacities for

monetary damages, they are not 'persons' subject to suit within the meaning of § 1983." *Id.* (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

However, regarding Plaintiff's failure to train and supervise claim arising under § 1983 (Count IV), it is unclear whether she seeks to bring this claim against Sheriff Pineiroa in his individual capacity (as stated in the Amended Complaint) or whether she seeks to impose *Monell* liability on the county by suing Sheriff Pineiroa in his official capacity (as stated in the Amended Complaint and argued in her response brief). *See* [R. 14, p. 16 (citing only to case law involving a *Monell* failure to train claim)]. Regardless, for the reasons set forth herein, under either theory, that claim (Count IV) fails to survive the Motion to Dismiss.

The Court will proceed based on this understanding of Plaintiff's federal claims. Having clarified these points, the Court turns to Defendants' arguments as to why the federal claims should be dismissed: (1) they are all time-barred; (2) the *Monell* and failure to train and supervise claims (Counts I and IV) are otherwise inadequately plead; and (3) Counts II and III are not based on violations of federal law. *See* [R. 5]; [R. 8].

### 2. Statute of Limitations

Defendants' Motion to Dismiss[2] first argues that Plaintiff's § 1983 claims are barred by the applicable statute of limitations. [R. 5-1, pp. 4–6]; [R. 8-1, pp. 5–6]. As a preliminary matter, Plaintiff's response asserts that Defendants' statute of limitations argument is premature at this stage of litigation. [R. 14, p. 4]. Indeed, Sixth Circuit case law is clear that because "the statute of limitations is an affirmative defense" and "a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim," motions to dismiss under Rule 12(b)(6) are "generally

---

[2] Defendants' Motion to Dismiss at [R. 8] seeks to incorporate arguments previously made in Defendants' original Motion to Dismiss at [R. 5]. [R. 8-1, p. 2]. Plaintiff did not object to this in her Response. *See generally* [R. 14]. Accordingly, the Court treats the arguments from Defendants' original Motion to Dismiss as having been incorporated in Defendants' subsequent Motion to Dismiss.

an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, "sometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case, . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Id.* (citation omitted). Accordingly, the Court will consider whether "the allegations in the complaint affirmatively show" that Plaintiff's claims are time-barred. *Id.*

The Court first considers when the applicable statute of limitations began to run on Plaintiff's § 1983 claims. The date the limitations period is triggered is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). For § 1983 cases, the Sixth Circuit applies the "discovery rule," meaning that "a § 1983 claim 'does not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, both his injury and the responsible party.'" *Cox v. City of Jackson*, 811 F. App'x 284, 288 (6th Cir. 2020) (quoting *Hall v. Spencer Cnty. Ky.*, 583 F.3d 930, 933 (6th Cir. 2009)). This objective inquiry asks 'what event should have alerted the typical lay person to protect his or her rights.'" *Id.* (quoting *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005)). "At that point, the plaintiff has a complete and present cause of action, such that he can file suit and obtain relief." *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (citation and quotations omitted).

In the present case, the "injury" for each of Plaintiff's § 1983 claims arises out of Defendants' alleged seizure of Plaintiff's car, which occurred "[o]n or around the next day after" June 15, 2020. [R. 7, ¶¶ 14, 17]. And Plaintiff does not appear to dispute that June 16, 2020 is the date that the statute of limitations began to run on Counts I, II, and III. *See* [R. 14, pp. 4–17]. However, Plaintiff argues that she was unaware of the alleged constitutional violation supporting her § 1983 failure to train and supervise claim (Count IV) until early 2025, and as a result, the

- 7 -

statute of limitations did not begin to run on that claim until early 2025. [R. 14, pp. 17–18]. The

Court need not resolve this issue, however, because, even assuming the § 1983 failure to train and

supervise claim was timely filed, it is otherwise inadequately pleaded, as set forth below. *See infra*

Section III(A)(5).

Turning to the applicable statute of limitations, the law is clear, and neither party disputes,

that "section 1983 actions in Kentucky are limited by the one-year statute of limitations found in

[K.R.S.] 413.140(1)(a)." *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990);

*see also Wright v. Louisville Metro Gov't*, 114 F.4th 817, 824 (6th Cir. 2025) (citing *Collard*).

Because the statute of limitations period began to run on or about June 16, 2020, Plaintiff's one-

year limitations period for her § 1983 claims would have expired on June 16, 2021—four years

before Plaintiff filed her original complaint on June 16, 2025. However, Plaintiff argues that this

one-year limitations period was tolled by the continuing violation doctrine. [R. 14, pp. 9–10, 11,

13–14, 15–16, 17–18].

The Sixth Circuit recently summarized the continuing-violation doctrine as follows:

The continuing-violation doctrine has two categories. . . .

The test for determining whether a continuing violation exists under the first
category has three components: wrongful conduct that continued after the
precipitating event that began the pattern; injury to the plaintiff that continued to
accrue after that event; and such further injury having been avoidable if the
defendants had at any time ceased their wrongful conduct. . . . Continual ill effects
from an original violation do not meet this standard. . . . Rather, defendants must
engage in continual unlawful acts. . . . Similarly, passive inaction does not support
a continuing violation theory.

The second category of continuing violations exists when the defendant has
committed several distinct acts of wrongdoing, and the cumulative effect of these
acts amounted to a constitutional violation. But if the defendant's separate acts of
wrongdoing are individually actionable, the continuing-violation doctrine does not
apply. . . .

*Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1034–35 (6th Cir. 2025) (citation modified).

Although Plaintiff does not state the category of continuing violations upon which her theory relies, the Court construes her Amended Complaint as relying on the first theory. *See* [R. 7, ¶¶ 37–39 (describing "unauthorized, intentional acts" that "created a trespass by taking that continued into the foreseeable future" and caused Plaintiff "continuing and ongoing injuries")]; [R. 14, p. 10 (describing "distinct, ongoing wrongful acts that continuously violated Plaintiff's rights")]. As a result, to succeed on this theory, Plaintiff must show "wrongful conduct that continued after the precipitating event that began the pattern; injury to the plaintiff that continued to accrue after that event; and such further injury having been avoidable if the defendants had at any time ceased their wrongful conduct." *Brown*, 135 F.4th at 1035 (citation modified).

In this case, Plaintiff has likely pleaded sufficient allegations under the continuing violation doctrine to render her § 1983 claims timely. Specifically, she alleges more than mere inaction or continuing ill effects; she alleges *additional wrongful conduct* by the defendants, including the 2024 letter from Sheriff Pineiroa demanding $17,000 for the return of her vehicle and a 2025 conversation in which a law enforcement officer informed her that the defendants had transferred the title to the car to their own names.[3] *See, e.g.*, [R. 7, ¶¶ 22–29]. Discovery may shed additional light on these allegations. At this time, however, Plaintiff has likely alleged additional wrongful conduct sufficient to trigger the continuing violation doctrine.

Regardless, as the Court has already explained, "the statute of limitations is an affirmative defense" and "a plaintiff generally need not plead the lack of affirmative defenses to state a valid

---

[3] It is unclear if the title was transferred into the names of the individual defendants or the Sheriff's Office generally, but this distinction is not relevant to the Court's analysis at this stage of the proceedings.

claim." *Cataldo*, 676 F.3d at 547. As such, motions to dismiss under Rule 12(b)(6) are "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Id.* And while "sometimes the allegations in the complaint affirmatively show that the claim is time-barred," that is not the case here, for the reasons already explained.

Because the allegations in the Amended Complaint do not "affirmatively show" that Plaintiff's § 1983 claims are time-barred, the Court will deny the Motion to Dismiss to the extent it argues Counts I, II, III, and IV are untimely. The Court therefore turns to Defendants' remaining arguments.

### 3. Section 1983 *Monell* Claim (Count I)

With respect to Plaintiff's *Monell* claim (Count I), Defendants argue that, even assuming this claim is timely, it is inadequately pled. [R. 5-1, pp. 6–10]; [R. 8-1, pp. 6–7].

To succeed on her *Monell* claim, Plaintiff must ultimately "demonstrate that [an] alleged federal violation occurred because of a municipal 'policy or custom.'" *Helphenstine v. Lewis County*, 60 F.4th 305, 323 (6th Cir. 2023) (quoting *Monell*, 436 U.S. at 694). Here, as to whether there is an alleged federal violation, Defendants "acknowledge that Plaintiff's *Monell* claim does involve an alleged violation of a constitutional right." [R. 8-1, p. 5]; *see also* [R. 5-1, p. 8 ("Plaintiff does allege a deprivation of her constitutional rights under her *Monell* claim—she claims that Defendants deprived her of her Fourteenth Amendment due process rights and her Fourth Amendment rights against unreasonable search and seizures." (citing R. 7, ¶ 37))]. They argue, however, that Plaintiff has failed to show that these alleged constitutional violations—that is, violations of her Fourth and Fourteenth Amendment rights—resulted from a municipal policy or custom. *See* [R. 5-1, pp. 6–10].

To demonstrate that the alleged violations occurred because of a municipal policy or

custom, Plaintiff can rely on one of four recognized theories: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Helphenstine*, 60 F.4th at 323 (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (internal quotation marks omitted).

In their motion, Defendants argue that only the second method (ratification) and fourth method (tolerance and acquiescence) are relevant to Count I, and Plaintiff has failed to adequately plead either method. [R. 5-1, pp. 7–10]. As an initial matter, however, the Court disposes of Defendants' argument that Plaintiff fails to "allege an official written policy of the Sheriff's Office." *Id.* at 9. As discussed below, an official written policy is not required to succeed under either a ratification or tolerance and acquiescence theory.

Instead, a ratification theory is "based on the illegality of the municipal law, policy, *or practice* at issue—whether ordinances, other official enactments, *or the appropriate official's ratification*." *Buehner v. City of Cleveland*, 788 F. Supp. 3d 827, 885 (N.D. Ohio 2025) (emphasis added) (quoting *Jackson v. City of Cleveland*, 622 F. Supp. 3d 636, 641 (N.D. Ohio 2022)). Under this theory, "[t]he actions of a single official can . . . create liability for the local government where that official has final policymaking authority." *Id.* (quoting *Gomez v. City of Memphis*, Nos. 21-5473/5644, 2023 WL 7287100, at *1 (6th Cir. Aug. 4, 2023)) (internal quotation marks omitted). When that official "affirmative[ly] approv[es] of a particular decision made by a subordinate," *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993), or "fail[s] to meaningfully investigate and punish allegations of unconstitutional conduct," *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020) (citation omitted), a plaintiff can establish *Monell* liability.

As to this ratification method, Defendants do *not* argue that Sheriff Pineiroa lacked final policymaking authority.[4] *See generally* [R. 5-1]; [R. 8-1]. Instead, Defendants argue that the *Monell* claim fails because Plaintiff's allegations are "vague and conclusory," and "Plaintiff has not pled facts which demonstrate that Sheriff Pineiroa either affirmatively approved [Defendant Bryan's] actions or failed to meaningfully investigate and punish the conduct" at issue. [R. 5-1, p. 9].

Defendants also argue that Plaintiff has failed to allege proper facts to support a tolerance or acquiescence theory. [R 5-1, pp. 9–10]. To succeed on a tolerance or acquiescence theory,

> "a plaintiff must show: (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the 'moving force' or direct causal link in the constitutional deprivation."

*Buehner*, 788 F. Supp. 3d 827 at 890 (quoting *Wallace v. Coffee Cnty.*, 852 F. App'x 871, 876 (6th Cir. 2021)). With respect to this theory, Defendants argue that Plaintiff offers only "mere conclusory statements that this was a custom of the Sheriff's Office," and she has failed to show "deliberate indifference." *Id.* The Court therefore understands that Defendants attack only the first and third elements of a tolerance or acquiescence theory, and as a result, the Court will only address these elements.[5]

---

[4] Regardless, the Court notes that Plaintiff specifically alleges that Sheriff Pineiroa is the "final decision-maker of the Nelson County Sheriffs Department." [R. 7, ¶ 7].

[5] To the extent Defendants argue that "Plaintiff has not pled facts sufficient to allege a 'deliberate choice' to follow a particular course of action sufficient to impose liability for Sheriff Pineiroa's own actions." [R. 5-1, 9], the Court understands such allegations are necessary only when the plaintiff relies on a single-act theory of liability. *See Burgess*, 735 F.3d at 479 ("[O]n a single-act theory, a plaintiff must demonstrate that a 'deliberate choice to follow a course of action is made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question.'" (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986))). However, based on the Amended Complaint and the briefing, the Court understands that Plaintiff is *not* relying on such a theory. *See, e.g.*, [R. 14, p. 5].

- 12 -

Accepting the facts in the Amended Complaint as true and viewing the Amended Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged facts supporting her ratification and tolerance and acquiescence theories. For example, in addition to discussing her own interactions with the defendants (and the taking of her vehicle), she also discusses the March 5, 2026 indictments[6] of both Sheriff Pineiroa and Bryan, wherein Sheriff Pineiroa was charged with abuse of public trust, theft by deception, and official misconduct, and Bryan was similarly charged with abuse of public trust, theft by deception, official misconduct, and forgery. [R. 7, ¶¶ 30–32]. Plaintiff also alleges that the taking of her vehicle "was *one* of the subject matters of the said criminal indictments," and she repeatedly refers to the defendants' "unauthorized, intentional acts." *Id.* ¶¶ 33, 34, 37, 38, 39 (emphasis added). When discussing the *Monell* claim, she specifically incorporates her prior allegations, *id.* ¶ 40, and describes the policy, custom, or practice by which the deputies of the Nelson County Sheriff's Department "would perform unauthorized intentional acts," including theft by deception, forgery, official misconduct, and abuse of the public trust, as well as "fabricating evidence to support the illusion of a legal finding to keep possession and control of individuals' personal property," such that it violated "the individual's constitutional rights to due process." *Id.* ¶ 41. She refers to this as the "Take and Keep Policy." *Id.* Throughout her discussion of the *Monell* claim, she repeatedly refers to not only the taking of her own vehicle, but the taking (and keeping) of "other individuals' personal property." *See id.* ¶¶ 42, 44. But not only does Plaintiff allege these facts that, with respect to this Motion to Dismiss, establish "the existence of a clear and persistent pattern of illegal activity," she also

---

[6] Per the status reports of the parties, [R. 18], [R. 19], [R. 22], the charges against the sheriff were ultimately dismissed, and Bryan pleaded guilty to two charges (both unrelated to Plaintiff's vehicle), while the other charges against him (including the charge relating to Plaintiff's vehicle) were dismissed. To be clear, however, neither the existence of the indictment nor the dismissal of the charges is dispositive in this case. Moreover, while the indictments were not attached to the complaint, the Court may still consider documents outside the pleadings "if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim" or are public records. *Farmer v. United Parcel Service Co.*, No. 3:24-CV-460-CHB, 2025 WL 278630, at *3 (W.D. Ky. Jan. 23, 2025) (citation omitted).

alleges that "Sheriff Pineiroa participat[ed] in the Take and Keep Policy," and "he directed his employees," including Bryan, "to do the same and made a deliberate choice to ignore the criminal acts and not to investigate and punish any individual." *Id.* ¶ 46.[7]

The Court finds that, at this stage of the proceeding and viewing the Amended Complaint in the light most favorable to the plaintiff, these facts sufficiently allege a *Monell* claim based on a ratification and/or tolerance and acquiescence theory. More specifically, with respect to the ratification theory, Plaintiff has alleged that Sheriff Pineiroa either affirmatively approved the actions of the deputy sheriffs, including Bryan, or he otherwise failed to meaningfully investigate and punish the conduct at issue. And with respect to the tolerance and acquiescence theory, she has alleged clear and specific facts to demonstrate "the existence of a clear and persistent pattern of illegal activity," as well as "tacit approval of the unconstitutional conduct, such that [the defendants'] deliberate indifference in their failure to act can be said to amount to an official policy of inaction."[8] *Buehner*, 788 F. Supp. 3d 827 at 890 (quoting *Wallace*, 852 F. App'x at 876); *see generally Jackson*, 622 F. Supp. 3d at 644 (discussing an alleged custom of tolerating rights violations and noting that "the complaint contains extensive and detailed allegations that the Cleveland police engaged in widespread and deeply rooted unconstitutional practices").

Lastly, to the extent Defendants argue that Plaintiff failed to attach a copy of the letter from Sheriff Pineiroa in which he demanded $17,000 for the return of the vehicle, the Court notes that Plaintiff is not required to attach that letter to her pleadings. Instead, Rule 12(b)(6) requires that

---

[7] To the extent Plaintiff argues in her response that there were at least twenty instances of improperly seized vehicles, [R. 14, p. 16], the Court agrees with Defendants that it cannot consider those allegations, which were raised for the first time in her response brief and are not contained in the Amended Complaint. *See* [R. 16, pp. 5–6]; *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020). Regardless, for the reasons already stated above, the Amended Complaint adequately alleges facts sufficient to support Plaintiff's *Monell* claim.

[8] Again, Defendants do not challenge the second or fourth elements of a tolerance and acquiescence theory, and the Court will not do their work for them.

- 14 -

the Court view the Amended Complaint "in the light most favorable to [Plaintiff]," accept "the allegations in the complaint . . . as true," and draw "all reasonable inferences . . . in [Plaintiff's] favor." *Gavitt*, 835 F.3d at 639–40 (citing *Jelovsek*, 545 F.3d at 434). Under this standard, and given the specific and well-pleaded facts outlined above, the Court finds that Plaintiff has sufficiently alleged her *Monell* claim.

Beyond arguing that Plaintiff has failed to allege facts sufficient to support a ratification theory or a tolerance and acquiescence theory, Defendants do not otherwise challenge Plaintiff's *Monell* claim. They do not, for example, argue that Plaintiff has failed to allege a violation of the Fourteenth or Fourth Amendments. *See* [R. 8-1, p. 5]; [R. 5-1, p. 8]. Accordingly, to the extent Defendants argue that Plaintiff's *Monell* claim (Count I) is inadequately pled, the Court will deny the Motion to Dismiss.

### 4. Section 1983 Claims Against the Defendants in Their Individual Capacities (Counts II and III)

Turning to the § 1983 claims against the defendants in their individual capacities (Counts II and III), the Court first notes that Plaintiff's Amended Complaint is far from a model of clarity. She has labeled her Count II claim as "42[]U.S.C. § 1983 Continuing Trespass Claim Pursuant to 42 U.S.C. 1983," [R. 7, p. 8], and her Count III claim as "Trespass to Property/Wrongful Taking/Conversion Pursuant to 42 U.S.C. § 1983 to the United States Constitution." *Id.* at 9. Defendants, in turn, argue that these claims fail because § 1983 claims must be based on violations of federal law, not state law. *See* [R. 5-1, pp. 11–12].

However, viewing the Amended Complaint in the light most favorable to Plaintiff, as the Court must do at this stage, *Gavitt*, 835 F.3d at 639–40, the Court finds that Plaintiff's § 1983 claims against the officers in their individual capacities (Counts II and III) are *not* based on violations of state law. Again, Plaintiff's Amended Complaint is not a model of clarity, but, when

read as a whole, it is clear that Plaintiff's allegations of Fourth and Fourteenth Amendment violations were not limited to her *Monell* claim. *See* [R. 7, ¶ 17 (alleging that her vehicle was taken pursuant to a criminal warrant "not involving" Plaintiff); ¶ 36 (alleging that her vehicle was taken without permission and was not returned to her despite her requests, and that she was informed that her vehicle had been confiscated and she needed to pay $17,000 for its return), ¶ 37 (alleging that the "unauthorized, intentional acts as alleged herein above" deprived Plaintiff of her vehicle, "without due process or just compensation, violating [Plaintiff's] constitutional rights"; ¶ 44 (discussing the alleged "Take and Keep Policy" and alleging it was "the moving force of the unlawful taking and keeping" of her vehicle and that it "constituted as a constitutional deprivation in violation of the Fourth (4th) Amendment and Fourteenth (14th) Amendment to the United States Constitution"); ¶ 48 (incorporating "each and every preceding allegation and averment"); ¶ 56 (same); ¶ 70 (alleging violations of her Fourth and Fourteenth Amendment rights)].

Moreover, Defendants *concede* that the Amended Complaint alleges violations of the Fourth and Fourteenth Amendments. For example, in discussing Count I, Defendants "acknowledge that Plaintiff's *Monell* claim does involve an alleged violation of a constitutional right." [R. 8-1, p. 5]. Specifically, they acknowledge, that "Plaintiff does allege a deprivation of her constitutional rights under her *Monell* claim—she claims that Defendants deprived her of her Fourteenth Amendment due process rights and her Fourth Amendment rights against unreasonable search and seizures." [R. 5-1, p. 8 (citing R. 7, ¶ 37)]. Indeed, if the *Monell* claim rests on the theory that there existed a policy or custom of ratifying or tolerating/acquiescing to Fourth Amendment and Fourteenth Amendment violations, as the Defendants argue and agree, then the underlying violations at issue are necessarily based on violations of the Fourth and Fourteenth Amendments.

Nevertheless, in their motion, the defendants argue only that Counts II and III cannot be based on state law. They do not otherwise challenge the allegations regarding violations of Plaintiff's Fourth and Fourteenth Amendments, and they make no other argument in support of dismissing these claims. *See generally* [R. 5-1]; [R. 8-1]. Indeed, their motion does not even address or outline the elements of a Fourth or Fourteenth Amendment claim. *See generally* [R. 5-1]; [R. 8-1]. To the extent they attempt to challenge these elements for the first time in their reply brief by arguing that Plaintiff must allege that state law remedies are insufficient, *see* [R. 16, p. 6], or that Plaintiff has failed to assert such claims in her Amended Complaint, *id.* at 6, 9, it is inappropriate to raise these arguments for the first time in a reply. *See generally SRVR, LLC v. Neidoni*, No. 3:18-CV-050-CHB, 2020 WL 201052, at *6 (W.D. Ky. Jan. 13, 2020) ("It is generally inappropriate to raise new issues in a reply brief because the non-moving party will not have a chance to respond." (citations omitted)). And, as already noted, the defendants have otherwise wholly failed to recite or engage with the elements of a Fourth or Fourteenth Amendment claim, either in their motion or reply brief, and the Court will not do their work for them. *See, e.g.*, *Members Heritage Credit Union v. New York Marine & General Ins. Co.*, No. 5:21-CV-207-CHB, 2023 WL 4876383, at *13 (E.D. Ky. July 31, 2023) (explaining that the plaintiff's argument was "wholly undeveloped and the Court need not consider it" (citations omitted)); *Brown v. Astrue*, No. 09-387-HRW, 2010 WL 4878866, at *3 (E.D. Ky. Nov. 24, 2010) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citation omitted)).

Accordingly, having found that Plaintiff's Counts II and III sufficiently allege claims arising under § 1983 for violations of the Fourth and Fourteenth Amendments, the Court will deny the Motion to Dismiss to the extent it seeks dismissal of those claims.

### 5.    Section 1983 Failure to Train and Supervise Claim (Count IV)

As already discussed, it is unclear whether Plaintiff seeks to bring her § 1983 failure to train and supervise claim against Sheriff Pineiroa in his individual capacity or whether she seeks to impose *Monell* liability on the county by suing Sheriff Pineiroa in his official capacity. *See* [R. 14, p. 16 (citing only to case law involving a *Monell* failure to train claim). Defendants address both theories in their motion, *see* [R. 5-1, pp. 10–11]. Plaintiff, however, appears to address only the latter in her response. *See* [R. 14, pp. 16–17]. For the reasons explained herein, the Court finds that Plaintiff has failed to adequately allege a failure to train and supervise claim, or has otherwise abandoned this claim (to the extent it is asserted against the sheriff in his individual capacity).

First, the Court considers the official-capacity claim against Sheriff Pineiroa, which is in effect a *Monell* claim against the county. As noted previously, a *Monell* claim requires the plaintiff to show "that [an] alleged federal violation occurred because of a municipal 'policy or custom.'" *Helphenstine*, 60 F.4th at 323 (quoting *Monell*, 436 U.S. at 694). And a plaintiff can show an illegal policy or custom by relying on one of four methods, the third of which requires the plaintiff to show "the existence of a policy of inadequate training or supervision." *Id.* (quoting *Burgess*, 735 F.3d at 478) (internal quotation marks omitted). To succeed under this "inadequate training or supervision" theory, the plaintiff must show "prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess*, 735 F.3d at 478 (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)) (internal quotation marks omitted). And the plaintiff must also show that "a municipality's improper training or supervision . . . 'actually caused' the plaintiff's injury." *Gambrel v. Knox Cnty.*, 25 F.4th 391, 408 (6th Cir. 2022) (quoting *Connick v. Thompson*, 563 U.S. 51, 70 (2011)). The Sixth Circuit has

described these requirements as "demanding elements." *Id.* Indeed, "[a] municipality's culpability for a deprivation of rights is at its most tenuous" under such a failure to train theory. *Helphenstine*, 60 F.4th at 323 (quoting *Connick*, 563 U.S. at 61).

In the present case, Plaintiff has failed to allege sufficient facts to support these demanding requirements. While Plaintiff has alleged prior instances of unconstitutional conduct, *see supra* Section III(A)(3) (discussing Count I), she fails to tie that alleged unconstitutional conduct to a lack of training or supervision. In other words, she has failed to allege facts demonstrating that the municipality "was clearly on notice that the *training in this particular area was deficient* and likely to cause injury." *Burgess*, 735 F.3d at 478 (emphasis added). That is, Plaintiff does not allege that deficient training lead to the various prior instances of unconstitutional conduct; instead, she alleges that the municipality should have *remedied* the alleged unconstitutional conduct through training and instruction. *See, e.g.*, [R. 7, ¶ 68 (alleging that the defendants "knew and/or should have known, trained, and instructed its employees, agents, and/or representatives to be *aware of* the aforesaid mention [sic] acts of constitutional violations and *guard against* such violations") (emphasis added)]. Accordingly, to the extent Plaintiff seeks to bring a second *Monell* claim based on a failure to train and supervise theory, that claim fails and will be dismissed.

To the extent Plaintiff seeks to bring a failure to train and supervise claim against Sheriff Pineiroa in his individual capacity, the Court understands this to be a supervisory liability claim. To succeed on this claim, Plaintiff they "must show that [Sheriff Pineiroa] was actively involved in offensive conduct, and that his conduct caused [her] injuries." *Helphenstine*, 60 F.4th at 321 (citing *Crawford v. Tilley*, 15 F.4th 752, 761–62 (6th Cir. 2021)). In other words, she must show that Sheriff Pineiroa, as a supervisory official, "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* (quoting

- 19 -

*Crawford*, 15 F.4th at 761) (internal quotation marks omitted). "This requires active unconstitutional conduct by the supervisor because supervisory liability will not attach for a failure to act." *Id.* (citing *Crawford*, 15 F.4th at 761). Stated another way, "[a] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisory either encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999)) (internal quotation marks omitted). There must also be "a causal connection between the defendant's wrongful conduct and the violation alleged." *Id.* (citation omitted).[9]

In the present case, Defendants argue only that Plaintiff has failed to sufficiently plead the "knowing acquiescence" requirement of this supervisory liability claim. *See* [R. 5-1, p. 11 ("Here, it is the knowing acquiescence prong which is insufficiently pled.")]. More specifically, Defendants argue, "Plaintiff has not pled facts beyond mere speculation regarding Sheriff Pineiroa's knowledge of [Defendant] Bryan's alleged conduct, much less facts which support a reasonable inference that Sheriff Pineiroa either failed to investigate or attempted to cover up the conduct." *Id.* Importantly, Plaintiff does not even attempt to rebut this argument. Indeed, in her response, she wholly fails to address this theory and appears to rely only an official capacity claim, that is, a *Monell* failure to train claim. *See* [R. 14, pp. 16–17]. Thus, from the best the Court can tell, Plaintiff has abandoned any supervisory liability failure to train claim against the sheriff in his individual capacity. As such, to the extent Plaintiff seeks to impose supervisory liability on Sheriff

---

[9] Defendants also assert that "the deprived right [must be] clearly established." [R. 5-1, p. 11]. For support, they cite to *Peatross*, in which the Sixth Circuit conducted a qualified immunity analysis. *See Peatross*, 818 F.3d at 245. Indeed, as part of a federal qualified immunity analysis, a court must not only consider whether there was a violation of a constitutional right, but it must also consider whether "the right alleged to have been violated was clearly established at the time of the violation." *Id.* But the defendants have not argued qualified immunity, and regardless, they challenge only the "knowing acquiescence" requirement of this supervisory liability claim.

Pineiroa, in his individual capacity, for the alleged failure to train and supervise, that claim will be dismissed.

In sum, with respect to Plaintiff's federal claims, the Court will grant the Motion to Dismiss as to only Count IV, the failure to train and supervise claim arising under § 1983. The remaining § 1983 claims (Counts I, II, and III) survive.

### B. State Law Claims

Plaintiff's Amended Complaint asserts the following state law claims: a claim under Kentucky common law for negligent "trespass on personal property/taken/conversion of personal property" (Count V, against both officers in their individual capacities); and a claim under Kentucky law for "trespass to property/wrongful taking/conversion" (Count VI, against both officers in their individual capacities). [R. 7, ⁋⁋ 40–88]. In their briefing, the parties treat these claims as negligent trespass on personal property, conversion, and intentional trespass to chattels. *See* [R. 14, pp. 19–20, 22, 23]; [R. 16, p. 4]. As to these claims, Defendants argue that the applicable statute of limitations bars any claim for negligent trespass on personal property and conversion, while the intentional trespass to chattels is inadequately pled. *See* [R. 5-1, pp. 12–13].

For the same reasons set forth above, *see supra* Section III(A)(2), the Court finds it inappropriate to engage in a statute of limitations analysis at this stage of the proceedings, given the facts alleged in the Amended Complaint. *See Cataldo*, 676 F.3d at 547 (explaining that "the statute of limitations is an affirmative defense" and "a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim," and as a result, motions to dismiss under Rule 12(b)(6) are "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations"). Because Defendants make no other arguments relating to negligent trespass on

personal property and conversion, these claims survive the Motion to Dismiss.[10]

As for Plaintiff's intentional trespass to chattels claim, Defendants do not argue that it is untimely; instead, they argue that Plaintiff "has failed to adequately plead intent" because she merely pleads that Defendants acted 'pursuant to false information.'" [R. 5-1, p. 13 (quoting [R. 1-1, ¶¶ 77–78])]; *see also* [R. 7, ¶¶ 83–84]. Elsewhere in the Amended Complaint, Plaintiff describes Defendants as acting "pursuant [to] a criminal warrant." [R. 7, ¶ 74]. Regardless, for an intentional trespass to chattels claim, "the intent necessary is the intent to intermeddle with the particular property." 13 *Ky. Prac. Tort Law*, Intent, § 7:2 (2025); *see also Huelett v. Louisville Paving Co., Inc.*, No. 3:23-CV-00420, 2025 WL 552686, at *12 (W.D. Ky. Feb. 19, 2025) ("Under the Restatement and Kentucky Law, trespass to chattels requires a showing that a defendant intentionally (1) dispossessed another of the chattel or (2) used or intermeddled with a chattel in the possession of another." (citing *Madison Cap. Co., LLC v. S & S Salvage, LLC*, 765 F.Supp.2d 923, 935 (W.D. Ky. 2011), *aff'd, Madison Cap. Co.*, 507 F. App'x at 542)); *Stanley v. Knuckles*, No. 2016-CR-1290-MR, 2017 WL 6398296, at *4 (Ky. Ct. App. Dec. 15, 2017) ("[T]he tort [of intentional trespass to chattels] is committed so long as one intentionally 'dispossesses' another of chattel or 'intermeddles' with the chattel while it is in another's possession."). Plaintiff clearly alleges Defendants acted with this intent to dispossess or intermeddle, describing Defendant Bryan as "order[ing]" the seizure of the car. [R. 7, ¶¶ 19–20]; *see also id.* ¶¶ 34, 39 (referencing intentional acts of the defendants). Defendants' argument that Plaintiff did not adequately plead intent therefore fails. *See Ladd v. Nashville Booting, LLC*, No. 3:20-CV-00626, 2021 WL 3363448, at *9–10 (M.D. Tenn. Aug. 3, 2021) (allegation that Defendants refused to return personal property upon request adequately pled trespass to chattels claim); *Greyhawk, LLC v.*

---

[10] Defendants do not make any qualified immunity arguments, and the Court will not do their work for them.

*Indiana/Kentucky Reg'l Council of Carpenters, Loc. Union No. 64*, No. 3:07-CV-727-S, 2009 WL 5169821, at *7 (W.D. Ky. Dec. 20, 2009) (allegation that the defendants acted "intentionally" sufficient to state a trespass claim).

Defendants also alternatively argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims if the Court decides to dismiss Plaintiff's federal claim. [R. 5-1, pp. 13–14]. Of course, for the reasons stated above, the Court will deny the Motion to Dismiss as to three of the four federal claims, and this alternative argument is therefore moot.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant the Defendants' Motion to Dismiss, [R. 8], as to Plaintiff's § 1983 failure to train and supervise claim (Count IV) and will otherwise deny the motion. Accordingly, the Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion to Dismiss, [R. 8], is **GRANTED IN PART** and **DENIED IN PART**.

   a. The motion is **GRANTED** to the extent Defendants seek dismissal of Plaintiff's § 1983 failure to train and supervise claim (Count IV).

   b. The motion is **DENIED** in all other respects.

This the 8th day of May, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

- 23 -